## In re GEORGE.

### Patent Appeal No. 3211.

Court of Customs and Patent Appeals.
Feb. 12, 1934.

Byrnes, Townsend & Potter, of Washington, D. C. (C. H. Potter and R. E. Parker, both of Washington, D. C., and C. C. Scheffler and W. R. Epes, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Pat-

ent Office, affirming a decision of the Examiner, rejecting, for want of invention in view of the prior art, claims 1 to 4, inclusive, and claims 19 to 22, inclusive, of appellant's application. All of the claims here in issue are product claims, of which claims 1 and 19 are illustrative and read as follows:

"1. A ductile article consisting of an iron-chromium alloy containing about 8% to 40% chromium having a cold-rolled surface finish and consisting throughout of metal in an annealed condition.

"19. A ductile article consisting of an iron-chromium alloy containing less than .1% of carbon and about 8% to 40% chromium having a cold-rolled surface finish and consisting throughout of metal in an annealed condition."

The references cited with respect to these claims are: McLarty, 1,072,751, September 9, 1913; Suzuki, 1,107,865, August 18, 1914; Nead, 1,508,567, September 16, 1924; Browne, 1,536,655, May 5, 1925; Koppers, 1,713,834, May 21, 1929.

Appellant's specification relates to a ductile iron-chromium article having a cold rolled surface finish, and a method of making the same. All of the method or process claims were allowed.

The references show, and appellant concedes, that a ductile iron-chromium alloy is old, and that a nonductile iron-chromium alloy having a cold rolled surface finish thereon is old, but appellant contends that an iron-chromium article having both ductility and a cold rolled surface finish is new and was invented by him. Appellant's specification recites that a cold rolled surface finish has a characteristic bright, smooth, and compact surface. Metallurgical authorities confirm, in a general way, this definition of a cold rolled surface finish. The Making, Shaping and Treating of Steel (4th Ed.), published by the Carnegie Steel Company, p. 954; Machinery's Encyclopedia, vol. 2, p. 157.

The only references discussed by the Board of Appeals with respect to the claims on appeal are the Nead and Browne references, and we are of the opinion that these are the only references which are material to the questions here involved.

The patent to Nead relates to treating iron-chromium alloys, and recites that the material is hot rolled, then placed in an annealing box and heated to give a soft, readily workable product. The material is then passed through cold rolls to loosen the scale, after which a pickling operation takes place which lifts or frees the scale so that it may be washed or brushed off, leaving a "smooth, silvery surface, which is of the desired stainless quality." The amount of chromium used is "around fifteen per cent" of the total ingredients, and of carbon "two tenths of one per cent, or as low as it is possible to get it."

The patent to Browne relates to a method of manufacturing steel sheets, which sheets are heated and rolled, then annealed and pickled to remove the scale, after which they are cold rolled to eliminate superficial surface defects formed in the hot rolling. The sheets are then again heated to a temperature suitable for rolling, but low enough to avoid scaling, and rolled to the length required. The sheets are then "annealed, pickled and finished in the regular way."

The patentee states:

"Since the surface of the sheets is smooth and free from defects due to the final hot-rolling on a mill having smooth highly-polished rolls, it is not necessary to resort to cold rolling in the finishing operation, and the omission of cold rolling during the finishing operation avoids the occurrence of Stead's brittleness in the final anneal."

The Board of Appeals in its decision states:

"Claims 1 to 4, inclusive, do not define, in our minds, a patentable article because they refer to such article as formed of a certain alloy of iron-chromium which has a cold rolled surface finish and which has been subjected to an annealing operation to render it more ductile and soft. While the art referred to by the Examiner does not describe such a ductile article, we maintain that such an article is not patentable. Whether the article is of iron-chromium alloy or of other sheet steel material which has been subjected to the old process of cold rolling to provide the surface finish desired and annealing to render the material soft and ductile involves no patentable distinction as we see it. Claims 2 and 4 add the limitation that the surface finish is free from oxide."

Claims 19 to 22, inclusive, were rejected for the same reasons as were claims 1 to 4, inclusive.

It will be noted that the board found that the prior art did not describe such an article as is here claimed, but the ground of rejection was that, it being old to cold roll sheet steel material to provide a surface finish, and then anneal it to render it soft or

ductile, there would be no invention involved in a product consisting of ductile iron-chromium having a cold rolled finish. In other words, it being shown that a cold rolled surface finish in iron-chromium is old, and that ductile iron-chromium alloy is old, and it being further shown that cold rolling carbon steel and then annealing it was old, there could be no invention involved in a product consisting of ductile iron-chromium alloy with a cold rolled surface finish.

We would be in entire agreement with the board were it a fact that the old process of annealing cold rolled steel sheets could be applied to an iron-chromium alloy, producing a ductile iron-chromium alloy with a cold rolled surface finish. In such case there would clearly be no invention; but appellant insists, and as hereinafter noted the Board of Appeals conceded, that the treatment of steel sheets shown by the reference Browne, upon which the board relied, could not be applied to an iron-chromium alloy with a resulting product of a ductile iron-chromium alloy article having a cold rolled surface finish.

Appellant moved for a reconsideration of said decision of the board, and its motion set out that the method shown by Browne for treating steel sheets could not be applied to an iron-chromium alloy with a resulting product such as is claimed by appellant. Appellant accompanied his motion by an affidavit of a metallurgist.

In its decision denying the motion for reconsideration, the board said:

"It was our intention to state that there was no patentable distinction, as we viewed the claims, between an article formed of an iron-chromium alloy and another article of other sheet steel material, both of which were provided with a surface finish by a cold rolling operation and then annealed to render the sheet soft and ductile. In other words, it being an old idea to treat one sheet steel material by cold rolling to form a surface finish and then annealing to render the sheet soft and ductile, we did not consider that a patentable article was produced by treating another article as a sheet of iron-chromium alloy in the same manner to produce a similar finish and ductile quality. We had no intention of implying that the two articles one of iron-chromium alloy and the other of sheet steel necessarily had exactly the same finish. Neither did we desire to imply that the exact process followed in forming a surface finish on one of these sheet materials could be followed in connection with an article of another material and derive exactly the same finish. It was our thought that, regardless of the exact finish produced, there was no patentable distinction between an article formed of an iron-chromium alloy treated by substantially the same process as used in connection with sheet steel when the resulting finish was much the same on both metals even though more easily and readily produced on one than another.

"We have noted the affidavits and statements submitted by appellant in the petition for rehearing and reconsideration and feel it is unnecessary to do more than make our position more definite and clear in the original decision. We had no intention of implying there was no distinction between the treatment of a cold rolled iron-chromium alloy and ordinary common steels to produce an annealed article having a cold rolled finish. The claims under consideration are to the article produced."

In view of the foregoing, we cannot agree with the Board of Appeals that, in view of the prior art, there would be no invention involved in a product consisting of a ductile iron-chromium alloy having a cold rolled surface finish and consisting throughout of metal in an annealed condition.

The board expressly held that the art cited by the Examiner does not describe such an article as is claimed by appellant, and in the language last above quoted it does not find that the prior art describes any annealing method that would apply to an iron-chromium alloy having a cold rolled surface finish.

It therefore appears to us that, under the facts found by the board, appellant has produced a new and useful article that was not described in the prior art, nor did such prior art show or suggest any method by which it could be produced. In view of the foregoing, we are constrained to hold that the Board of Appeals erred in rejecting the claims here involved.

We are frank to say that we are not clear that the Nead patent does not describe a ductile iron-chromium article having a cold rolled finish. However, the board held that such an article is not so described and, while we are in doubt upon this point, in accordance with the well-established rule, we resolve such doubt in appellant's favor.

Moreover, even if the Nead patent should

be properly construed as describing an iron-chromium alloy having a cold rolled surface finish and having a degree of ductility, each of the claims here involved contains the further provision that the article consists "throughout of metal in an annealed condition," or words similar in substance. While the Nead patent refers to his product as being "soft" or ductile, it is clear from his description of his process that the cold rolled surface would not be in an annealed condition when his process was completed.

The Solicitor for the Patent Office cites in support of the decision of the Board of Appeals the case of In re Higgins, 40 App. D. C. 29, 1913 C. D. 375, in which claims for a wrought metal, seamless, water-tube boiler header were held to be without invention over the prior art. It appeared that welded wrought metal headers were old and that a seamless one-piece cast header was old. The court in its opinion said:

" * * * The superiority of wrought metal over cast being apparent, the problem which confronted him was to perfect a process and devise machinery that would enable him to duplicate the cast metal header in wrought metal. The function of the header produced by him is identical with the cast and wrought headers of the prior art. It does not follow that, because it is superior in point of utility to those preceding it, appellant is entitled to a patent."

The distinction between said case and the case at bar will be at once observed from the above quotation. There the function of the header produced by Higgins was identical with the cast and wrought headers of the prior art. Furthermore, what was done by Higgins was the devising of a method by which a metal well known in the art could be utilized to produce an article also well known in the art but not previously made of said metal. In the case at bar the article claimed is new, unless, as hereinbefore discussed, such article is described in the Nead patent, and it has uses for which a ductile iron-chromium alloy without a cold rolled finish, or a nonductile iron-chromium alloy with such finish, are not adapted.

Applying the rule that doubt should be resolved in favor of the applicant, we conclude that all of said claims here on appeal should be allowed, and the decision of the Board of Appeals is reversed.

Reversed.